Freeman, J.,
delivered the'opinion of the court.
On the 17th of June, 1860, Sharp sold, and gave-bis title bond for title, a tract of land to Hamner. On this tract of land there was a school-house, with about one and three-quarter acres of land annexed to it, which had been built by Sharp and several of his neighbors on this lot of Sharp’s land, no conveyance of the land having been made by Sharp to any one. It was erected for the purposes of the school. The title bond included the school-house and land, it being a part of the tract sold.
On the 18th of February, as appears by the date of the instrument, Hamner, on the request of Sharp, executed the following instrument: “In the trade of *702 the land between myself and R. P. Sharp, it is understood that he reserves the school-house and lot of land, containing about one and three-fourth acres, situated and composing part of the land mentioned in the bond he executed to me.”
The only questions now presented for decision, arises out of the rights of the parties growing out of the sale, and this release, in reference - to this schoolhouse. The original bill alleges, substantially, that soon after the purchase of the land, Sharp went to Hamner and stated to him that he did not wish to sell the school-house and lot, but wished to reserve it, for the reason that the school-house had been built by the citizens of the neighborhood, and he wished it to be given to the public. The bill states that the school-house stands on the land purchased, and Hamner has paid taxes on it for eight years since his purchase, but that Sharp, with a design to defraud complainant, induced him to sign the release above quoted. Complainant charges that he made the release for and upon the consideration, and no other, of the promise of Sharp that said school-house and lot should be used for a school-house and nothing else, but’ that now Sharp claims it as his private property, and has offered to sell it.
The prayer of the bill on this subject is, that Sharp be compelled to deliver up the release, or that complainant be credited on his note for the purchase-money, the value of the school-house, and for general relief.
Sharp answers, as to the matter of the school *703 house, that it -was true in making the title bond there was no reservation of the • school-house, because at that time it was not thought of, but that it had been agreed on by parol before the trade, and was understood between the parties; that on the next day after the sale or execution of the bond he remembered the school-house, in which the neighborhood was interested, had not been reserved in the bond, and sent to complainant and desired him to release him (Hamner) from his obligation for title so far as the school-house and lot were- concerned, which he did, without any fraud, by the instrument we have recited. He further says — which seems to be the fact — that the school-house was built by himself and two other neighbors, and was intended to be used as a school-house by the neighbors, if they chose to send to it; although, he adds, it was reserved as private property.
On the first hearing of the case, the Chancellor directed an amended bill to be filed by Hamner, in behalf of himself and the public, in which he charges that the school-house was near his house and convenient for sending his children to school; that this fact was urged as one inducement by Sharp for his buying the land; that lie bought in view of the fact, and the, house was to be kept and used as a schoolhouse, and insists that it would be a fraud on. him now to allow Sharp to sell the property and divert it from its original design. Says he signed the release on the representation of Mitchell, who brought the paper to him, that Sharp only wanted the house *704 kept as a school-house, and wished the release that it might not be diverted from, this use, otherwise he would not have signed; claims that the school-house was erected for the benefit of the public as a schoolhouse; prays an injunction against its sale by Sharp, and in the event the court shall hold the release valid, then the court declares the house to be held for the public as a school-house, and if not so used, that the reversion shall be to complainant.
Sharp answers, and insists that the school house was private property; that he never sold the schoolhouse to complainant; that he would have missed selling his land before he would have done so; that it was forgotten when the title bond was written, but the release was' in accordance with the original understanding of the parties, and no fraud.
The proof would show that it is probable the school-house was mentioned between the parties, and it was understood that the house was to be reserved as a school-house, and that with this view the release was signed by Hamner. It further shows that Sharp has proposed to sell the house, and claims that one of the parties who aided in building has assented to his doing so — there having been only two others, Sar-tain and Blackburn, who aided in building the schoolhouse. Sartain, however, says he never gave any assent to its sale.
We think it clear that to sell the house, or convert it to any other use than a school-house, will be an act of bad faith on the part of Sharp; but the question is, did the law authoi'ize a court of chancery *705 to interfere to prevent this, or do the circumstances raise such a trust as can be enforced?
We. must construe this .instrument as if it had been contained in the title bond, for by its terms it purports .to be a reservation of the school, and says it is understood that Sharp resérves the school-house and lot of land to himself. In order, then, to clearly understand what the instrument means, we may place ourselves in the precise condition of the parties, by means of surrounding circumstances, and in the light of these circumstances ascertain the contract-of the parties. From these circumstances it clearly appears that the one sold and the other bought the land, with the understanding that this school-house should remain as it was at the time of the purchase for the use of the neighborhood, to be used for school purposes, and that the purchaser should enjoy its advantages. These facts clearly appearing, the reservation means, when read in their light, that it is, by agreement of the parties, agreed that Sharp sells the land, but the purchaser agrees he shall reserve the legal title to this lot and school-house, charged with the trust of holding it for the purposes of its erection, and- as a school-house for the common benefit of the purchaser and the neighborhood contiguous. Such a trust, being clearly made out, and resulting from a fair construction of the instrument read by the surrounding facts accompanying its execution, we hold can be enforced, as the objects are definite and well defined.
We therefore hold, that Sharp should be enjoined *706 from selling this house and lot, and he be declared to hold the same for a school-house, and charged with this trust and use. The Chancellor’s decree will be modified in accordance with this. The costs of this court will be paid by Sharp and Hamner equally, and below as directed by the Chancellor.